# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                              No. CR 22-0893 JB

MATHEW JAMES CERNO,

       Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Plaintiff United States' Motion for Dangerousness Evaluation by the Bureau of Prisons, filed October 23, 2023 (Doc. 47)("Motion"). In the Motion, the United States requests that the Court commit Defendant Mathew Cerno to the custody of the Attorney General of the United States "for a reasonable additional period of time for an evaluation to determine whether Mr. Cerno is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury." Motion at 1. The Court held a hearing on November 9, 2023. The primary issues are: (i) whether the Court should find that there is not a substantial probability that in the foreseeable future Cerno will attain the capacity to permit the proceedings to go forward; and (ii) whether the Court should order that Cerno remain in the Attorney General's custody for an additional reasonable period of time so that a dangerousness evaluation may be conducted. The Court concludes that: (i) there is no substantial probability that in the foreseeable future Cerno will attain the capacity to permit the case to proceed; and (ii) Cerno shall remain in the Attorney General's custody for an additional period of time and a dangerousness evaluation pursuant to 18 U.S.C. § 4246 shall be conducted. The facility director may determine whether to issue a dangerousness certificate pursuant to 18 U.S.C.

§ 4246(a).  The commitment period for examination must last for only a reasonable period of time, not to exceed forty-five days.  The Court will, therefore, grant the Motion.

## **FACTUAL BACKGROUND**

The Court takes its background facts from the Criminal Complaint, filed May 2, 2022 (Doc. 1).  The Court recognizes that the factual background is largely the Plaintiff United States of America's version of events and that the Defendant is presumed innocent.  The United States alleges that, on February 23, 2018, law enforcement officers from the Federal Bureau of Investigations ("FBI") interviewed Cerno, who indicated that he knew the location of the individual responsible for murdering multiple women whose bodies had been found on the West Mesa outside of Albuquerque.  See Criminal Complaint ¶ 6, at 4.  From October, 2021, to January, 2022, Cerno contacted the FBI Albuquerque Field Office on numerous occasions and indicated that he wished to follow up on his prior report.  See Criminal Complaint ¶¶ 7-10, at 4-5.  FBI agents interviewed Cerno a second time following his first follow-up telephone call in October, 2021,  see Criminal Complaint ¶ 7, and spoke with him over the telephone on November 20, 2022, see Criminal Complaint ¶¶ 8-9, at 4.  During the November 20, 2022, telephone call, Cerno provided information similar to that provided in his earlier interviews, and the FBI agent who spoke with Cerno noted that "he was likely under the influence of drugs or alcohol due to the disjointed nature of [his] speech."  Criminal Complaint ¶ 9, at 4.  The FBI agent fielding Cerno's calls (the "agent") declined to speak with Cerno when he called additional times over the next two months, and, instead, directed him to call the FBI call center, before eventually blocking Cerno's telephone number.  Criminal Complaint ¶ 10, at 4-5.

The United States alleges that on January 28, 2022, Cerno left four threatening voicemails on the agent's telephone.  <u>See</u> Criminal Complaint ¶¶ 11-17, at 5-6.[1]  In the first voicemail, Cerno accused the agent of having sexual intercourse with multiple people, including the agent's spouse, whom Cerno identified by first and last name.  <u>See</u> Criminal Complaint ¶¶ 11-12, at 5.  In other voicemails, Cerno told the agent that he would: (i) "saran wrap your bitch ass," and let the "girls you've fucked, and got pregnant . . . hit you until . . . I get tired of watching," Criminal Complaint ¶ 16, at 6; (ii) "drug your ass and let every fucking drag queen I know have a chance at it," Criminal Complaint ¶ 17, at 6; and (iii) "stick a tube up [the agent's ass] and fill it with air until you rip in half," Criminal Complaint ¶ 17, at 6.  Cerno also stated: "You were born a bitch, you're gonna die a bitch. That badge from the FBI ain't gonna save your ass."  Criminal Complaint ¶ 17, at 6.  In three of the four voicemails, Cerno referred to the agent as "Giellermo" [sic], Criminal Complaint ¶ 21 at 7, an individual whom Cerno indicated had wronged him in the past, <u>see</u> Criminal Complaint ¶ 14, at 6.

## **PROCEDURAL BACKGROUND**

After Cerno's arrest on May 9, 2022, <u>see</u> Arrest Warrant at 1, filed May 10, 2022 (Doc. 4), a grand jury indicted Cerno on one count of stalking with intent to kill, injure, harass, intimidate another person via an electronic communication system of interstate commerce, in violation of 18 U.S.C. 2261A(2), <u>see</u> Indictment at 1, filed May 25, 2022 (Doc. 20).  On October 19, 2022, Cerno filed an unopposed motion requesting "that the Court issue and order finding that the Defendant is not presently competent to stand trial."  Defendant's Sealed Unopposed Motion for an Order

---

[1]"Although the phone number had been blocked on the Agent's cellular phone, CERNO was still able to leave voicemails on the Agent's phone . . . ."  Criminal Complaint ¶ 11, at 5.

Finding Defendant Incompetent and Committing Defendant to Bureau of Prisons for Restoration Pursuant to 18 U.S.C. § 4241(d) at 1 (dated July 30, 2021), filed October 19, 2022 (Doc. 33)("Motion Requesting Restoration"). The Motion Requesting Restoration further requested the Court commit Cerno "to the custody of the Attorney General" so that a determination could be made regarding whether there was a "substantial probability" that Cerno would attain the capacity to allow proceedings to continue against him in the "foreseeable future." Motion Requesting Restoration at 1. Cerno included with his Motion Requesting Restoration a report from a State court proceeding finding him incompetent to stand trial. See Competency to Stand Trial Evaluation, filed October 19, 2022 (Doc. 33-1)("First Competency Report"). The First Competency Report based its conclusion that Cerno did not have a rational understanding of the proceedings against him nor an ability to assist in his own defense -- and, therefore, incompetent to stand trial -- on the fact that Cerno harbored an "inflexible" delusion that he had witnessed FBI agents commit the 1992 West Side Murders.[2] First Competency Report at 7. See id. at 3-4 (describing Cerno's "elaborate delusional conspiracy" regarding the West Side Murders); id. at 5-6 (describing Cerno's mental health history).

On November 7, 2022, the Court granted the Motion Requesting Restoration, finding Cerno to be incompetent and ordering Cerno committed to the custody of the Attorney General to be hospitalized to determine whether there was a "substantial probability" that Cerno will attain competency in the "foreseeable future" pursuant to 18 U.S.C. §§ 4241(d) and 4247(c)(A). Order

---

[2]The West Side Murders are the are the unsolved killings of eleven women whose remains were found buried on the West Mesa of Albuquerque, New Mexico, in 2009. See West Mesa Homicide Investigation, City of Albuquerque, https://www.cabq.gov/police/contact-the-police/west-mesa-homicide-investigation (last visited November 16, 2023).

Finding Defendant Incompetent and Committing Defendant to the Custody of the Attorney General for Restoration, filed November 7, 2022 (Doc. 35)("Order for Restoration"). Subsequently, forensic psychologist Dr. Drew J. Miller, of the Metropolitan Correctional Center ("MCC"), in Chicago, Illinois, completed an evaluation of Cerno, and concluded that he is incompetent to stand trial and is unlikely to become competent within a reasonable time.  See Forensic Evaluation at 15-16 (dated July 25, 2023), filed August 24, 2023 (Doc. 45-1)("Second Competency Report").  In the Second Competency Report, Dr. Miller details Cerno's long history of alcohol and drug use, see Second Competency Report at 11-12, in addition to Cerno's belief that he had witnessed "one of the West Mesa murders in 1992" and had been  "targeted by those involved in with the murder" ever since, Second Competency Report at 5.  Dr. Miller also describes the restorative treatment that Cerno has undergone since he arrived at MCC, during which medical staff indicate that they "did not have any concerns about Mr. Cerno's mental health symptoms" other than "his delusional beliefs," which they believe "may affect Mr. Cerno's competency-related abilities."  Second Competency Report at 8-9.  Based on his evaluation of Cerno, Dr. Miller ultimately offers a diagnosis of continuous "Delusional Disorder," Second Competency Report at 11, and concludes that Cerno's ongoing "persecutory delusions" render him unable to "understand the nature and consequences of the proceedings against him, or to assist properly in his defense," Second Competency Report at 15.  Dr. Miller further concludes that, because of the "enduring relation between his mental illness and competency-related deficits," it is unlikely that Cerno's competency would be restored.  Second Competency Report at 15.

On October 23, 2023, the United States filed the Motion requesting that the Court commit Cerno to the Attorney General's custody for an additional period of time to conduct a "dangerousness" evaluation -- 18 U.S.C. 4246 -- to determine whether the nature of Cerno's mental

health condition would result in "a substantial risk of bodily injury to another person or serious damage to the property of another" were Cerno to be released.  Motion at 1.  The United States argues that, pursuant to 18 U.S.C. 4246(a), "the director of a facility where a person is hospitalized" properly may make the determination that the United States requests, where the individual has been "committed to the custody of the Attorney General pursuant to section 4241(d)."  Motion ¶ 3, at 2 (citing 18 U.S.C. 4246(a)).  The United States explains that the Second Competency Report does not address Cerno's dangerousness under section 4246(a), but only evaluates Cerno's competency to stand trial and "prognosis for success in restoration to competency in a reasonable timeframe for trial."  Motion ¶ 4, at 2.  The United States indicates that it has "discussed the situation" with Dr. Miller, who informed the United States that "another facility and another medical provider would perform the 'dangerousness' evaluation . . . once a court order was issued for such an evaluation to be performed."  Motion ¶ 5, at 2 (no citation given for quotation).  The United States concludes by arguing that a further dangerousness evaluation is warranted, because Cerno "remains in the custody of the Attorney General," and because Cerno "has been indicted for a violent offense and has a documented history of making violent threats and causing serious damage to the property of others."  Motion ¶ 6, at 3.

Cerno responds to the United States' Motion.  See Defendant's Response to the Government's Motion for Dangerousness Evaluation by the Bureau of Prisons [Doc. 47], filed November 8, 2023 (Doc. 51)("Response").  Cerno begins by indicating that the United States accurately recounts that Dr. Miller examined Cerno, and concludes that he is incompetent to stand trial and unlikely to become competent in the foreseeable future, see Response ¶ 1, at 1, and agrees that Dr. Miller did not address Cerno's dangerousness in his evaluation,  Response ¶ 3, at 2-3. Cerno argues, however, that 18 U.S.C. § 4246(a) "does not apply to this case," because "the

director of the facility where Mr. Cerno was hospitalized did not certify that Mr. Cerno's 'release would create a substantial risk of bodily injury to another person or serious damage to the property of another.'" Response ¶ 4, at 3 (quoting 18 U.S.C. § 4246(a)).

The United States replies to Cerno's Response and argues that the Court may find Cerno "subject to the provisions of 18 U.S.C. § 4246" despite "that there has been no certificate of dangerousness issued by the warden of a facility where the Defendant was evaluated."  United States' Reply to Defendant's Response to the United States' Motion for Dangerousness Evaluation by the Bureau of Prisons, filed November 8, 2023 (Doc. 52)("Reply").  The United States explains that, "as a practical matter," the evaluation the United States requests is a necessary predicate to the certification contemplated in 18 U.S.C. § 4246(a).  Reply at 1.  The United States further provides that "the correct proceeding in cases such as this is that this Court find that the Defendant is incompetent, unlikely to be restored to competency, and that the Defendant 'is subject to the provisions of sections 4246 . . . .'"  Reply at 2 (quoting Email from Drew Miller to Tavo Hall at 1 (dated October 24, 2023), filed November 11, 2023 (Doc 52-1)).[3]

---

[3]In the Reply, the United States adjusts slightly what it requests of the Court.  In the Motion, the United States requests the Court to commit Cerno to the Attorney General's custody so that a dangerousness evaluation could be performed.  See Motion at 1.  The Reply, by contrast, requests that the Court, before ordering Cerno committed, "issue a finding that the Defendant is not competent, and unlikely to be restored to competency, and therefore subject to the provisions of 18 U.S.C. § 4246."  Reply at 2.  The United States makes this additional request in response to Dr. Miller's clarification of the proper process by which a court orders a dangerousness evaluation pursuant to 18 U.S.C. § 4246, which Dr. Miller described in an email that the United States attaches to its Reply:

> Before the process for 18 U.S.C. Section 4246 to begin [sic], the Court would need to find and order that Mr. Cerno is "not competent and unlikely to be restored and is therefore subject to the proceedings outlined in 4246." Then, the Court orders Mr. Cerno to complete an evaluation pursuant to 18 U.S.C. Section 4246; Mr. Cerno is designated and transferred to a BOP facility to complete that

The Court held a hearing on November 9, 2023.  See Draft Transcript of Hearing (taken November 9, 2023)("Tr.").[4]   At the hearing, the United States began by clarifying that the "statutory scheme" dictates the proper procedure the Court must follow.  Tr. at 2:6-8 (Hall).  The United States argued that, now that the Court has received the Second Competency Report which it requested in the Order for Restoration indicating that Cerno is unlikely to regain competency in the foreseeable future, the Court can now make a finding on the record that Cerno is "unlikely to be restored."  Tr. at 2:7-16 (Hall).  At that point, the United States explained, the Court could pursue further avenues for restoration, such as involuntary medication, or, if it makes a finding that Cerno is unlikely to be restored, proceed to the processes outlined in 18 U.S.C. § 4246 or 18 U.S.C. § 4248.  See Tr. at 2:16-3:2 (Hall).  The United States indicated that it was not requesting the Court follow the procedures outlined in 18 U.S.C. § 4248, because the "nature of the dangerousness is not sexually related."  Tr. at 3:2-4 (Hall).

Turning to the dispute that Cerno's Response raised, the United States argued that, despite 18 U.S.C. § 4246's lack of clarity, the requirement for a "certificate from the warden of the facility" contemplated in § 4246(a) is "just a matter of practicality."  Tr. at 3:8-16 (Hall).  The United States could not have received a certificate, the United States explained, where no dangerousness

---

evaluation; the forensic evaluator evaluates Mr. Cerno and offers an opinion as to his dangerousness; if the evaluator's opinion is that statutory criteria are met, a certificate is issued to the Court; and a hearing on the issue of dangerousness is held.

Email from Drew Miller to Tavo Hall at 1(dated October 24, 2023), filed November 11, 2023 (Doc 52-1).

[4]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

evaluation has been completed.  See Tr. at 3:16-4:4 (Hall).  Finally, the United States described that, once the dangerousness evaluation is conducted, the "certificate of dangerousness could issue" from the director of the facility where the evaluation takes place.  Tr. at 4:4-8 (Hall).  At that point, the certificate would be sent to the district court in the district in which the facility conducting the evaluation is located for a final hearing and determination regarding Cerno's dangerousness.  See Tr. at 4:8-25 (Hall).

Cerno responded that, while he does not oppose the Court entering a finding under 18 U.S.C. § 4242(d) that Cerno is "not competent and not restorable," he disagrees that there "is statutory authority to proceed the way the Government is proposing."  Tr. at 5:15-6:8 (Court, Elsenheimer).  Cerno argued that the certificate indicating an individual "is suffering from mental disease or defect, the result of which would be a substantial risk of bodily injury to another or serious damage to property," must "come about as part of the competency evaluation or the restorability evaluation," and is a necessary "trigger" to 18 U.S.C. § 4246.  Tr. 6:23-7:6 (Elsenheimer).  Section 4246's plain language, Cerno continues, confirms that a certificate must be issued before Cerno can be committed for a dangerousness evaluation, and that § 4246 does not provide an avenue for a "restoration evaluation and then a return for dangerousness evaluation."  Tr. at 7:8-14 (Elsenheimer).

In response to the Court's question whether there is an issue with entering an order telling the BOP to issue a certification, Cerno contended that there would be no mechanism for staying the proceedings.  See Tr. at 8:8-11 (Court, Elsenheimer).  Despite that the Court believed there likely is no need for a stay, because Cerno is incompetent and cannot stand trial, see Tr. at 8:12-14 (Court), Cerno argued that he believed that "upon the finding of the lack of competency and the lack of restorability[,] the case should be dismissed," Tr. at 8:15-17 (Elsenheimer).  Cerno,

therefore, averred that a stay of Cerno's release, as opposed to a stay of the proceedings, would be required, and there is no "statutory authority to stay his release unless there is a certificate."  Tr. at 8:18-22 (Elsenheimer).  See id. at 9:19-22 (clarifying that the essence of the dispute is "a matter of statutory construction").  The Court responded that, in the past, it had "never had an issue with just sending him back for the evaluation of dangerousness."  Tr. at 8:23-9:3 (Court).

The Court indicated, however, that because it had not had the chance to review fully the Response and Reply, which had been filed only a day before the hearing, it would give the issue some thought.  See Tr. at 9:4-16 (Court, Elsenheimer).  The United States concluded briefly by directing the Court to United States v. Curbow, 16 F.4th 92 (4th Cir. 2021), which the United States argued clarifies that Cerno remains in legal custody and is still subject to detention for an additional "reasonable time" to conduct a dangerousness evaluation.  Tr. at 9:25-11:15 (Hall).  In addition, the United States provided that there is no requirement that the restoration and dangerousness determination must be conducted at the same time, see Tr. at 11:15-12:2 (Hall), and that the fact that 18 U.S.C. § 4246 is written in the "past tense" clarifies that an evaluation for dangerousness is the proper next step, Tr. at 12:2-12:25 (Hall).  Cerno briefly responded that, because a dangerousness evaluation was not ordered when the Court ordered Cerno be evaluated for restoration in the Order for Restoration, no certificate was issued, and, accordingly, Cerno should be released without a dangerousness evaluation.  See Tr. at 13:7-19 (Hall)("He's not competent, he can't be put to trial, there is no certificate regarding his potential for dangerousness[,] and therefore he should [be] released.").

## LAW REGARDING THE FEDERAL COMPETENCY PROCESS
## UNDER 18 U.S.C. § 4241 AND 18 U.S.C. § 4246

"It has long been accepted that a person whose mental condition is such that he lacks the

capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." Drope v. Missouri, 420 U.S. 162, 171 (1975). The Supreme Court of the United States of America has "approved a test of incompetence which seeks to ascertain whether a criminal defendant 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding -- and whether he has a rational as well as factual understanding of the proceedings against him.'" Drope v. Missouri, 420 U.S. at 172 (quoting Dusky v. United States, 362 U.S. 402, 402 (1960)). "[T]he failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial." Drope v. Missouri, 420 U.S. at 171. The defendant cannot waive the issue of a defendant's competence to proceed. See Pate v. Robinson, 383 U.S. 375, 384 (1966). Mental competency is a fluid concept, and so a finding that a defendant is mentally competent does not necessarily bind the court throughout the prosecution's pendency. See Drope v. Missouri, 420 U.S. at 179-80. Due process does not require a greater burden of proof in a competency hearing than a finding by a preponderance of the evidence. See Medina v. California, 505 U.S. 437, 446-52 (1992). More recently, the Supreme Court has said that the competency requirement "has a modest aim: It seeks to ensure that [the defendant] has the capacity to understand the proceedings and to assist counsel." Godinez v. Moran, 509 U.S. 389, 402 (1993).

A competency determination is factual rather than legal. See United States v. Mackovich, 209 F.3d 1227, 1232 (10th Cir. 2000). In determining competency, the court "may rely on a number of factors, including medical opinion and the court's observation of the defendant." United States v. Boigegrain, 155 F.3d 1181, 1189 (10th Cir. 1998)(quoting United States v. Nichols, 56 F.3d 403, 411 (2d Cir. 1995)). A defendant's history of irrational behavior is relevant

to determining the defendant's mental competency.  See Drope v. Missouri, 420 U.S. at 172 n.9

(citing Pate v. Robinson, 383 U.S. at 384).  A defense counsel's opinion that "the defendant is not

a person of sound mind and should have a further psychiatric examination before the case should

be forced to trial" may be sufficient to raise the issue of competency.  Drope v. Missouri, 420 U.S.

at 177.  A defendant's refusal to participate in psychological evaluation is not necessarily evidence

of the defendant's mental incompetency, particularly where there is reason to believe the defendant

"may be malingering or manipulating the system."  United States v. Mitchell, 706 F. Supp. 2d

1148, 1151 (D. Utah 2010)(Kimball, J.)(citing United States v. Gigante, 925 F. Supp. 967, 976

(E.D.N.Y. 1996)(Nickerson, J.)).

The United States Court of Appeals for the Tenth Circuit has explained that determining

whether a defendant is competent to stand trial occurs in three steps.

> Determining whether an accused is competent to stand trial is a three step
> process. *See generally United States v. Deters*, 143 F.3d 577, 579-80 (10th Cir.
> 1998) (reviewing the process). First, if there is "reasonable cause to believe that the
> defendant may presently be suffering from a mental disease or defect rendering him
> mentally incompetent," the court may order a psychiatric or psychological
> examination of the defendant. 18 U.S.C. § 4241(a). At the second stage, the court
> uses the psychological report and conducts a hearing to determine whether the
> defendant is competent. If the defendant is not found to be competent, the court
> must order the defendant hospitalized for up to four months to determine whether
> the defendant will become competent in the foreseeable future. The court may order
> additional hospitalization if it finds there is a substantial probability that within the
> additional time, the defendant will become competent. *See id.* § 4241(d). At the
> third stage, after the specified period of confinement has expired, the court
> determines whether the defendant is competent and thus ready to stand trial. If still
> found not to be competent, the defendant must be released unless the court finds
> that he presents a substantial risk of harm to others. *See id.* §§ 4241(d), 4246; *United
> States v. Steil*, 916 F.2d 485, 486-87 (8th Cir.1990).

United States v. Boigegrain, 155 F.3d at 1184 n.1.  See United States v. Velazco-Barraza, No. CR

10-2217, 2010 WL 4339347, at *4 (D.N.M. Sept. 21, 2010)(Browning, J.).

1.      **Procedure for Determining Mental Competency Under 18 U.S.C. § 4241(a).**

Under 18 U.S.C. § 4241(a), on the United States', the defendant's, or the court's own motion, the trial court must order a hearing to determine the defendant's competency to stand trial if there is reasonable cause to believe that the defendant is incompetent.  See 18 U.S.C. § 4241(a). 18 U.S.C. § 4241(b) provides that a court may order a psychological examination pursuant to 18 U.S.C. § 4247(b) and (c) before the hearing.  See 18 U.S.C. § 4241(b).  Section 4241(a) provides that such a motion can be made at any time up to sentencing.  See 18 U.S.C. § 4241(a).  Section 4241(c) requires that courts conduct competency hearings pursuant to 18 U.S.C. § 4247(d), which provides for: (i) representation of the defendant by counsel; (ii) an opportunity for him to testify, to present evidence, and to subpoena witnesses on his behalf; and (iii) the opportunity to confront and to cross examine witnesses.  See 18 U.S.C. §§ 4241(c), 4247(d).  The court then makes its determination and disposition pursuant to 18 U.S.C. § 4241(d) regarding whether the defendant is competent to stand trial.

A court "must first determine, by a preponderance of the evidence, whether the defendant suffers from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." United States v. Morales-Gonzales, 376 F. Supp. 2d 1066, 1070 (D.N.M. 2004)(Browning, J.)(quoting United States v. Azure, 279 F. Supp. 2d 1093, 1094 (D.N.D. 2003)(Hovland, J.)).  If the court concludes that the defendant is competent, then the case will proceed.  See United States v. Morales-Gonzales, 376 F. Supp. 2d at 1070.  If the court concludes that the defendant lacks sufficient mental competency to proceed to trial, the statutory directive is clear: "'[I]f there is a finding of incompetence to stand trial, there must be a period of hospitalization.'" United States v. Morales-Gonzales, 376 F. Supp. 2d at 1070 (alteration in

original)(quoting <u>United States v. Azure</u>, 279 F. Supp. 2d at 1095.  Section 4241(d) describes this

process and the requirement for a period of hospitalization in greater detail:

> (d)    Determination and disposition. -- If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General.  The Attorney General shall hospitalize the defendant for treatment in a suitable facility --
>
>> (1)    for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward; and
>>
>> (2)    for an additional reasonable period of time until --
>>
>>> (A)    his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward; or
>>>
>>> (B)    the pending charges against him are disposed of according to law;  whichever is earlier.
>
> If, at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to permit proceedings to go forward, the defendant is subject to the provisions of sections 4246 and 4248.

18 U.S.C. § 4241(d).

## 2.    <u>Procedure for Determining Dangerousness Under 18 U.S.C. § 4246(a).</u>

The Court has described that

> once the court has determined that a defendant is incompetent as specified in 18 U.S.C. § 4241, the respective time limits for holding a defendant until he becomes or is likely to become competent have passed, and once it is determined that the defendant's mental condition has not so improved to permit proceedings to go forward, the defendant becomes subject to the provisions of 18 U.S.C. §§ 4246 and 4248.

United States v. Martin, No. CR 08-1012, 2011 WL 5220310, at *13 (D.N.M. Sept. 27, 2011)(Browning, J.)(citing 18 U.S.C. § 4241(d))("Martin").  Congress amended 18 U.S.C. § 4246 into its modern form in 1984 as part of the Insanity Defense Reform Act of 1984.  See Insanity Defense Reform Act of 1984, Pub. L. No. 98-473, § 402, 98 Stat. 1837.  This statute allows a district court to order the civil commitment of an individual who has been committed to the Attorney General's custody based on a determination of mental incompetency if the United States proves that individual is "presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another."  18 U.S.C. § 4246(a).

When such a certification is filed, the statute automatically stays the individual's release from prison, thereby giving the United States an opportunity to prove its claims of dangerousness under § 4246 at a hearing through psychiatric or other evidence.  See 18 U.S.C. §§ 4246(a)-(b), 4247(b)-(c).  Before the hearing occurs, "the court may order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court, pursuant to" 18 U.S.C. § 4247(b) and (c).  18 U.S.C. § 4246(b).  The statute, 18 U.S.C. § 4246, provides that the prisoner "shall be represented by counsel," and shall have "an opportunity" at the hearing "to testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine" the United States' witnesses.  18 U.S.C. §§ 4246(c), 4247(d).

If at the hearing the United States proves its claim of dangerousness under § 4246 by "clear and convincing evidence," the court will order the prisoner's continued commitment in "the custody of the Attorney General," who must "make all reasonable efforts to cause" the State where that person is to be tried, or the State where he is domiciled, to "assume responsibility for his custody, care, and treatment."  18 U.S.C. § 4246(d).  If either State is willing to assume that

responsibility, the Attorney General "shall release" the individual "to the appropriate official" of

that State.  18 U.S.C. § 4246(d).  If, however, "notwithstanding such efforts, neither such State

will assume such responsibility," then "the Attorney General shall place the person for treatment

in a suitable facility."  18 U.S.C. § 4246(d).  Confinement in the federal facility will last until

either: (i) the director of the facility in which the person is hospitalized determines and then files

a certificate with the court that the person's mental condition has improved to the point where he

or she is no longer dangerous, with or without appropriate ongoing treatment; or (ii) a State

assumes responsibility for his or her custody, care, and treatment, in which case he or she will be

transferred to that State's custody.  See 18 U.S.C. § 4246(d)(1)-(2), (e).  When the first situation

applies, the court either can order the defendant's release or, on its own motion or the United

States' motion, hold a hearing to determine whether by a preponderance of the evidence release

should occur and whether to impose any conditions on release.  See 18 U.S.C. § 4246(e).  Lastly,

the statute establishes a system for ongoing psychiatric and judicial review of the individual's case,

including judicial hearings at the confined person's request at six-month intervals.  See 18 U.S.C.

§ 4247(e)(1)(B), (h).

      18 U.S.C. § 4246 does "not authorize a district court to conditionally release a person on

its own initiative before civil commitment under 18 U.S.C. §§ 4246 or 4248 has occurred."  Martin,

2011 WL 5220310, at *13.  Rather, conditional release may occur only when "the Director of the

facility in which a person is placed" makes the initial determination that the individual should be

released and then files "an appropriate certificate to this effect with the court."  Martin, 2011 WL

5220310, at *13 (citing 18 U.S.C. §§ 4246(d)-(e)).

## ANALYSIS

      The Court will grant the Motion. The Court concludes that: (i) there is not a "substantial

probability that in the foreseeable future [that Cerno] will attain the capacity to permit the trial to proceed,"[5] 18 U.S.C. § 4242(d); and (ii) Cerno shall remain in the Attorney General's custody for an additional period of time and a dangerousness evaluation pursuant to 18 U.S.C. § 4246 shall be conducted.  The facility director may determine whether to issue a dangerousness certificate pursuant to 18 U.S.C. § 4246(a).  Pursuant to 18 U.S.C. 4247(b), the commitment period for examination must last for only a reasonable period of time, not to exceed forty-five days.

I.    **THE COURT CONCLUDES THAT CERNO IS UNLIKELY TO BECOME COMPETENT WITHIN A REASONABLE TIME.**

It is undisputed that if, after the period of restoration, Cerno's mental state has not so improved as to permit the trial to proceed, the provisions of 18 U.S.C. § 4246 apply.  18 U.S.C. § 4241(d).  The Court previously found that Cerno was not competent to stand trial and ordered Cerno committed to the Attorney General's custody for treatment and a determination whether Cerno may become competent pursuant to 18 U.S.C. § 4241(d).  See Order for Restoration at 1. The Court subsequently received Dr. Miller's Second Competency Report, in which Dr. Miller concludes that Cerno is unlikely to become competent within a reasonable time.  See Second Competency Report at 15-16.  Specifically, Dr. Miller indicates that Cerno's delusions are "challenging to treat," that Cerno's gender designates that he will have "worse functional outcomes as compared to women," and that "additional periods of restoration treatment" are unlikely to

---

[5]The Court acknowledges that it has the authority to order Cerno involuntarily medicated in order to render Cerno competent for trial pursuant to Sell v. United States, 539 U.S. 166, 181 (2003). The Court concludes, however, that involuntary medication is not appropriate here, because the United States has not demonstrated that administration of psychotropic drugs in this case "is substantially likely to render [Cerno] competent to stand trial."  Sell v. United States, 539 U.S. at 181.  Accordingly, the involuntary administration of drugs would not be constitutionally permissible.

restore Cerno's competency.  Second Competency Report at 15.  As an initial matter, therefore, the Court concludes that there is not "a substantial probability that in the foreseeable future [Cerno] will attain the capacity to permit the proceedings to go forward."  18 U.S.C. § 4241(d)(1). Accordingly, the provisions of 18 U.S.C. § 4246 apply.  See 18 U.S.C. § 4241(d).

## II.    THE COURT ORDERS CERNO REMAIN IN THE ATTORNEY GENERAL'S CUSTODY FOR AN ADDITIONAL PERIOD OF TIME SO THAT THE DIRECTOR OF THE FACILITY TO WHICH CERNO IS COMMITTED MAY DETERMINE CERNO'S DANGEROUSNESS.

Cerno argues that, because the Court did not request a dangerousness evaluation when the Court ordered Cerno committed to the Attorney General's custody for the restoration determination, no certificate regarding Cerno's dangerousness has been issued by the director of the facility at which Cerno was held.  See Response ¶ 4, at 3.  Consequentially, Cerno contends, the provisions of 18 U.S.C. § 4246 cannot be triggered, the case against Cerno must be dismissed, and Cerno must be released.  See Response ¶ 4, at 3; Tr. at 13:7-19 (Hall).  The United States responds that the Court has the authority to order Cerno confined for an additional reasonable period to determine his dangerousness.  See Reply at 2.  The Court must determine, therefore, whether it is proper to order Cerno returned to a facility so a determination may be made as to whether a certificate of dangerousness should be issued, despite that no such certificate presently exists.

Two initial matters are worth addressing at the outset.  First, the Court lacks the statutory authority to order a dangerousness evaluation be undertaken concurrent with an evaluation of a defendant's potential to be restored to capacity.  In United States v. Velazco-Barraza, 2010 WL 4339347, the defendant requested that the Court order the BOP to assess not only whether there was a "substantial probability that in the foreseeable future Velazco-Barraza will attain the

capacity to permit the proceedings to go forward," but also, during the same period of commitment, whether the defendant's release would "create a substantial risk of bodily injury to another person or serious damage to the property of another."  2010 WL 4339347, at *3 ("Velazco-Barraza's attorney requests, and the United States does not oppose, that the Court order that Velazco-Barraza's dangerousness be evaluated while he is hospitalized for his competency examination."). The Court acknowledged that "the Bureau of Prisons' beds at the Federal Medical Center are scarce, and that having Velazco-Barraza travel to Albuquerque to attend hearings may cause delay -- even significant delay -- as he waits for a bed not once, but twice."  United States v. Velazco-Barraza, 2010 WL 4339347, at *5.  The Court concluded, however, that it lacked the "authority to order an evaluation of Velazco-Barraza's dangerousness under 18 U.S.C. § 4246 before Velazco-Barraza completes his hospitalization and examination under 18 U.S.C. § 4241(d)."  United States v. Velazco-Barraza, 2010 WL 4339347, at *4.  The Court reasoned that, because a dangerousness examination may be conducted only where the defendant is subject to 18 U.S.C. § 4246 -- and the defendant becomes subject to § 4246 only after the completion of the competency examinations that § 4241 contemplates, including the determination whether the defendant may be restored to competency -- the Court cannot order concurrently the completion of both the restoration and dangerousness assessments.  See United States v. Velazco-Barraza, 2010 WL 4339347, at *3-5. Accordingly, here, in the Order for Restoration, the Court was precluded from ordering both an evaluation to determine whether Cerno may be restored to competency and a dangerousness evaluation in one stroke.

Second, despite Cerno's request that he be released because he is "not competent, he can't be put to trial, [and] there is no certificate regarding his potential for dangerousness," Tr. at 13:7-19 (Hall), the Court lacks the authority to order Cerno's release at this stage of the statutorily

defined competency evaluation process. In <u>Martin</u>, the Court held that "a district court can conditionally release a defendant under 18 U.S.C. § 4246 only after actual commitment for dangerousness under that statute has occurred." 2011 WL 5220310, *13. <u>See id.</u> ("[T]here is no authorization in [18 U.S.C. §§ 4246 or 4248] for a district court to conditionally release a defendant on its own initiative."). The Court recognized in <u>Martin</u> that the proper procedure was first for "the Director of the facility in which a person is placed" to determine the defendant's dangerousness. <u>Martin</u>, 2011 WL 5220310, *13. Only then does section 4246(e) contemplate that the Court may "hold a hearing . . . to determine whether [the defendant] should be released." 18 U.S.C. § 4246(e).[6] Consequently, even if the Court concluded that Cerno's "release would no longer create a substantial risk of bodily injury to another person or serious damage to property of another," it still would be without the authority to order Cerno released from custody absent a certification from the director of a facility in which Cerno is housed certifying lack of dangerousness. 18 U.S.C. § 4246(e)(1). <u>See</u> 18 U.S.C. § 4246(e)(2) (providing for a defendant's "conditional release under a prescribed regimen of medical, psychiatric, or psychological care" after certification from the facility's director). <u>But</u> <u>see</u> <u>Ecker v. United States</u>, 538 F. Supp. 2d

---

[6]In discussing the proper procedure for an individual's release in the competency context, the Court in <u>Martin</u> acknowledged that "counsel for the defendant or his legal guardian can move that the district court hold a hearing on release." 2011 WL 5220310, at *13 (citing 18 U.S.C. § 4247(h)). Section 4247(h), however, provides not that a defendant's counsel or legal guardian may move for their release from custody, but, rather, that they may move the court that "the person should be discharged from . . . the facility in which a person is committed." 18 U.S.C. § 4247(h). The Court finds no statutory authority in section 4247(h) for a defendant to petition for his or her release from custody. Rather, section 4246(e) -- which, abstrusely, is titled "Discharge," just as is section 4247(h) -- provides the sole avenue for a defendant to seek release from custody who has been adjudged to lack competency to stand trial and has been evaluated for dangerousness. 18 U.S.C. § 4246(e). Finally, the Court acknowledges that section 4248(e), which is not at issue in this case, likewise provides the proper procedures for release of an individual evaluated for sexual dangerousness. <u>See</u> 18 U.S.C. § 4248(e).

331, 335 (D. Mass. 2008)(Gorton, J.)(determining that a hearing to determine whether the defendant should be released could be held despite that no "formal certification from the Warden of MCFP Springfield" had been issued, because of the case's "unique posture due to the particular facts and circumstances of Ecker's confinement," namely, that the defendant had "been incarcerated in federal custody for over 18 years without having been tried, convicted or sentenced"), aff'd and remanded, 575 F.3d 70 (1st Cir. 2009).

Turning to the heart of the dispute -- whether the Court may order Cerno committed to the Attorney General's custody for an additional period of time so that the decision whether a certificate of dangerousness should be issued can be made -- the Court concludes that it has this authority.  The plain language of § 4241(d), which provides that a defendant "is subject to the provisions of section[] 4246" if it is determined that the defendant is unlikely to regain competency, 18 U.S.C. § 4241(d), "constitutes clear authority" to order Cerno remain in custody so that a determination regarding his dangerousness may be made, United States v. Truax, No. CR07-11322008, WL 4924785, at *1 (D. Ariz. November 17, 2008)(Campbell, J.) affirmed by United States v. Truax, 325 Fed. Appx. 591 (9th Cir. 2009), cert. denied, Truax v. U.S., 562 U.S. 1021 (2010).  See United States v. Godinez-Ortiz, 563 F.3d 1022, 1032 (9th Cir. 2009)("Godinez-Ortiz")("§ 4246 necessarily contemplates the temporary commitment of that person so that the director can conduct the evaluation necessary to make the certification decision.").  Cerno's argument is unavailing that the provisions of § 4246 are not triggered until the facility director issues a certificate, despite § 4246's apparent "lack of clarity and direction."  United States v. Williams, No. CR-11-8022, 2013 WL 3864258, at *6 n.7 (D. Ariz. July 25, 2013)(Snow, J.)(citing additional cases recognizing the gaps in § 4246's statutory scheme).

Two truths evidence the incongruence of § 4241 and § 4246.  First, § 4246(a)'s language

contemplates that a dangerousness certificate will be issued while the defendant presently "is hospitalized . . . pursuant to section 4241(d)." 18 U.S.C. § 4246(a). Second, § 4246's provisions apply only "at the end of" the defendant's hospitalization pursuant to § 4241. Herein lies what district courts long have referred to as "one of the many gaps under section 4246." United States v. Wheeler, 744 F. Supp. 633, 637 (E.D. Pa. 1990)(Huyett, J.). See United States v. Jackson, No. 03-173-04, 2009 WL 691973, at *3 (E.D. Pa. March 16, 2009)(Surrick, J.)("[S]everal courts have recognized that § 4246 contains troubling gaps in the statutory scheme."). Stated precisely, a defendant cannot presently be hospitalized pursuant to § 4241, as section 4246 contemplates, if the only way the defendant becomes "subject to the provisions of section[] 4246" is for this same hospitalization to be at its "end." 18 U.S.C. § 4241(d). Logically, then, "§ 4246 necessarily contemplates," Godinez-Ortiz, 563 F.3d at 1032, this gap be filled by a court direction that the director at a federal medical facility "determine preliminarily whether the defendant should be released" by issuing a certificate as to his or her dangerousness. S. Rep. No. 225, 98th Cong., 2d Sess., reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3418, 3433. See United States v. Rivera-Morales, 365 F. Supp. 2d 1139 (S.D. Cal. 2005)(Rhoades, J.)("[A]lthough it is true that, based upon the plain language of the statute, the certification must be filed in order to institute § 4246 proceedings, this does not answer the question of whether the court can direct the facility director to make a determination of whether a dangerousness certification should be filed . . . ."), aff'd, 160 F. App'x 648 (9th Cir. 2005). As the Ninth Circuit reasoned in Godinez-Ortiz, "a contrary ruling would thwart the director's ability to consider whether to issue a dangerousness certificate, despite ample evidence that [the defendant] may pose a danger to others if released." 563 F.3d at 1032. Moreover, seeing as the Court lacks the authority to order Cerno's release at this juncture, see Martin, 2011 WL 5220310, *13, the only possible path forward -- and,

specifically, toward the possibility of Cerno's release -- is to order a determination whether to issue a dangerousness certificate be made.   For these reasons, the Court concludes that it has the authority to order Cerno temporarily committed to the Attorney General's custody so that the director of the facility to which Cerno is committed can make a determination whether a dangerousness certification should be issued.[7]

In Godinez-Ortiz, the United States Court of Appeals for the Ninth Circuit held, on nearly identical facts to those here, that the district court properly ordered a defendant returned to the Attorney General's custody so that a determination of whether to issue a dangerousness certificate could be made.  See 563 F.3d at 1032.  In Godinez-Ortiz, as here, Godinez-Ortiz was committed to a federal medical facility so that a restoration determination could be made, and the district court subsequently determined that "there was no substantial probability that Godinez-Ortiz would

---

[7]In so concluding, the Court joins numerous other district courts who have recognized this gap in the statutory framework, and found implied in the interplay between U.S.C. § 4241 and § 4246 the authority to provide the director of a facility tasked with treating a defendant the opportunity to evaluate the potential danger that defendant poses. See, e.g., United States v. Trillo-Cerda, 244 F. Supp. 2d 1065, 1069 (S.D. Cal. 2002)(Rhoades, J.)(finding no case law "holding that where a federal pretrial detainee is determined to be incompetent under § 4241, a dangerousness certification under § 4246 is precluded simply because the defendant happens not to be in the physical custody of the treatment facility where he was originally committed"); United States v. Truax, No. CR07-1132, 2008 WL 4924785, at *2 (D. Ariz. Nov. 17, 2008)(Campbell, J.)("The Court concludes that it has the authority under § 4241(d) to return Defendant to the custody of the Attorney General for the purpose of allowing the doctors at FMC-Springfield to certify Defendant as dangerous pursuant to § 4246, should they find that such a certification is warranted."), aff'd, 325 F. App'x 591 (9th Cir. 2009); United States v. Ferguson, No. 04-CR-14041, 2020 WL 5100099 (S.D. Fla. Aug. 5, 2020)(Matthewman, M.J.)(granting the United States' motion and ordering that the "Defendant should be committed to the custody of the Attorney General and immediately transported to FMC-Butner so that a dangerousness evaluation can be conducted and the Director of FMC-Butner can determine whether to file a Section 4246(a) certificate"), report and recommendation adopted, No. 04-14041-CR, 2020 WL 4922360 (S.D. Fla. Aug. 21, 2020)(Middlebrooks, J.).

obtain competence in the foreseeable future." 563 F.3d at 1025-26. The United States then moved

the court that Godinez-Ortiz "be returned to FMC-Butner to provide the facility director with the

opportunity to reevaluate him and issue a dangerousness certificate pursuant to 18 U.S.C. § 4246,

if appropriate," and the district court granted the United States' motion and ordered "Godinez-

Ortiz be returned to FMC-Butner for a period of 45 days to give the facility an opportunity to

determine whether to file a dangerousness certificate pursuant to § 4246." 563 F.3d at 1026.

      The Ninth Circuit reasons that this procedure was proper and that the district court had

authority to take such action, because it concluded that, "[i]n authorizing the director to file a

dangerousness certification, § 4246 necessarily contemplates the temporary commitment of that

person so that the director can conduct the evaluation necessary to make the certification decision."

Godinez-Ortiz, 563 F.3d at 1032. The Ninth Circuit continues that, "if the District Court had not

ordered Godinez-Ortiz returned to the facility at this juncture, no opportunity for such a

determination would have existed." Godinez-Ortiz, 563 F.3d at 1031. The Ninth Circuit

concludes that "the fact that [Godinez-Ortiz] was temporarily in California for the purpose of a

hearing rather than at FMC-Butner did not remove him from custody and did not mean he was no

longer subject to § 4246," and provided that the duration of the temporary commitment a district

court may order "to provide the director with an opportunity to consider whether to issue a

dangerousness certificate . . . is controlled by 18 U.S.C. § 4247(b)." Godinez-Ortiz, 563 F.3d at

1032. The Ninth Circuit's reasoning in Godinez-Ortiz is persuasive.

      Here, providing the director with the opportunity to consider Cerno's dangerousness is

warranted. See United States v. Ferguson, No. 04-CR-14041, 2020 WL 5100099, at *7 (S.D. Fla.

Aug. 5, 2020)(Matthewman, M.J.)("The release of Defendant without the statutorily-authorized

dangerousness evaluation by FMC-Butner could have disastrous consequences for the Defendant,

other persons in the community, and the property of others in the community."), <u>report and recommendation adopted</u>, No. 04-14041-CR, 2020 WL 4922360 (S.D. Fla. August 21, 2020)(Middlebrooks, J.).  Despite that the Second Competency Report indicates that Cerno does not "currently pose[] a substantial risk of dangerousness in the current conditions of his confinement," and "has not engaged in any known aggressive behavior" while undergoing evaluation for restoration, Second Competency Report at 16, "an evaluation under § 4246 for dangerousness is materially different from an evaluation under § 4241 for competency to stand trial," <u>United States v. Curbow</u>, 16 F.4th 92, 96 (4th Cir. 2021).  Moreover, in the threats that Cerno made, which give rise to the charges against him, Cerno indicated on numerous occasions that he wished to commit acts of violence against the FBI agent.  <u>See</u> Factual Background, <u>supra</u> at 2-3.  Finally, a § 4246 evaluation seems particularly desirable given that the Court lacks the authority to release Cerno at this juncture, and § 4246(e) provides the appropriate avenue by which Cerno may be released from custody if it is determined that he lacks dangerousness.  <u>See</u> <u>United States v. Velazco-Barraza</u>, 2010 WL 4339347, at *4.

Accordingly, because the parties and the Court agree that Cerno will not become competent to stand trial any time in the near future, the Court will order Cerno remain in the Attorney General's custody and will order an examination of Cerno for dangerousness.  The facility director can determine whether to issue a dangerousness certificate pursuant to 18 U.S.C. § 4246(a).  The commitment period for examination must last for only a reasonable period of time, not to exceed forty-five days.  18 U.S.C. § 4247(b).[8]

---

[8]The Court agrees with the Ninth Circuit in <u>Godinez-Ortiz</u> and with district courts that have addressed the issue that the proper duration for Cerno's commitment so that the facility director may determine whether to issue a dangerousness certificate is forty-five days, as 18 U.S.C.

**IT IS ORDERED** that: (i) the United States' Motion for Dangerousness Evaluation by the Bureau of Prisons, filed October 23, 2023 (Doc. 377)("Motion"), is granted; (ii) there is no substantial probability that in the foreseeable future Cerno will attain the capacity to permit the case to proceed; (iii) Cerno shall remain in the Attorney General's custody for an additional period of time and a dangerousness evaluation pursuant to 18 U.S.C. § 4246 shall be conducted; (iv) the facility director may determine whether to issue a dangerousness certificate pursuant to 18 U.S.C. § 4246(a); and (v) the commitment period for examination must last for only a reasonable period of time, not to exceed forty-five days.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Alexander M. M. Uballez
  United States Attorney
Jackson T. Hall
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

---

§ 4247(b) provides.  See Godinez-Ortiz, 63 F.3d at 1032; 18 U.S.C. § 4247(b)("For the purposes of an examination pursuant to an order . . . under section . . . 4246 . . . the court may commit the person to be examined for a reasonable period . . . but not to exceed forty-five days."); United States v. Truax, 2008 WL 4924785, at *2 (same).  Cf. United States v. Martin, No. CR 08-1012, 2011 WL 5220310, at *18 (D.N.M. Sept. 27, 2011)(Browning, J.)("Martin")("The commitment period for [the 18 U.S.C. § 4248] examination must last for only a reasonable period of time, not to exceed forty-five days.").

Aric G. Elsenheimer
  Supervising Assistant Federal Public Defender
Office of the Federal Public Defender, District of New Mexico
Albuquerque, New Mexico

*Attorney for the Defendant*